IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KAREN ALTHEA BROWN | * |
| | * |
| v. | *   Civil Case No. JFM-13-2427 |
| | * |
| COMMISSIONER, SOCIAL SECURITY | * |
| | * |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. ECF Nos. 18, 20. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Brown's motion be denied.

Ms. Brown applied for Disability Insurance Benefits and Supplemental Security Income on May 11, 2010, alleging a disability onset date of December 22, 2009. (Tr. 121-28). Her claims were denied initially on July 1, 2010, and on reconsideration on November 3, 2010. (Tr. 58-64, 65-68). An Administrative Law Judge ("ALJ") held a hearing on May 3, 2012, (Tr. 22-51), and subsequently denied benefits to Ms. Brown in a written opinion, (Tr. 7-21). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Ms. Brown suffered from the severe impairment of degenerative joint disease in her right knee. (Tr. 12). However, the ALJ determined that Ms. Brown retained the

residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can do work that frequently requires balancing and stooping; and occasionally requires kneeling, crouching, crawling, and climbing; and she requires a sit or stand option allowing her to sit or stand alternately, at will.  She requires a cane to walk.

(Tr. 13).  After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Brown could perform work existing in significant numbers in the national economy, and that she was not therefore disabled.  (Tr. 16-17).

Ms. Brown disagrees, and asserts several arguments in support of her appeal:  (1) that the ALJ improperly held that transferability of skills is not material to the determination of disability; (2) that the ALJ improperly evaluated the medical opinion evidence; (3) that the ALJ's credibility findings were incomplete; and (4) that the ALJ's finding of a sit/stand option is not based on the opinion of any acceptable medical source.  All of the arguments raised by Ms. Brown are unpersuasive.

Initially, Ms. Brown argues that the ALJ erroneously determined that transferability of job skills is not material to the determination of disability.  Pl. Mot. 21-22.  The ALJ based that finding on the fact that the Medical-Vocational Rules supported a finding of "not disabled" whether or not Ms. Brown had transferable skills. (Tr. 16).  The ALJ then stated, somewhat confusingly, that additionally he relied on VE testimony in deciding Ms. Brown's case, because sole reliance on the Medical-Vocational Rules was precluded by Ms. Brown's nonexertional, postural limitations.  *Id.; see also* 20 C.F.R. § 404.1569a(c).  Ultimately, the ALJ did not rely on the existence of any transferable job skills in finding that Ms. Brown was capable of working as a "case aide" or "companion."  While those positions are semi-skilled, *see* SSR 00-04P, 2000 WL 1898704, at *3 (Dec. 4, 2000), individuals who have completed formal schooling through

the twelfth grade, as Ms. Brown has, are considered capable of such work.[1]  20 C.F.R. § 404.1564(b)(4); 20 C.F.R. 416.964(b)(4).  Accordingly, I can find no cause for remand in the ALJ's Step Five analysis.

Ms. Brown next contends that the ALJ assigned too little weight to the opinions of her treating physicians, Dr. Sterling (orthopedist) and Dr. Esege (primary physician).  Pl. Mot. 22-26.  However, the ALJ had provided a detailed summary of the medical records pertaining to Ms. Brown's knee impairment, which showed improvement in her condition, a discharge from physical therapy due to non-compliance, and an ability to exercise regularly.  (Tr. 14, 202, 233-24, 258).  The ALJ correctly noted the disparity between those relatively moderate treatment notes and the comparatively dire opinions expressed by the treating physicians.  (Tr. 14-15).  Further, the ALJ noted that Dr. Sterling's opinion that Ms. Brown's condition met Listing 1.04A was inconsistent with his contemporaneous assessment indicating that her pain would not impose nonexertional occupational limitations beyond limiting her ability to stand for prolonged periods.  (Tr. 15) (comparing Tr. 285 with Tr. 287-89).  A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)).  This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  In light of the

---

[1] Moreover, as the Commissioner notes, SSR 82-41 does not mandate an analysis of transferable jobs skills, stating only that it will be a decisive issue in "relatively few instances."  1982 WL 31389, at *1 (Jan. 1, 1982).  Where, as is the case here, an individual's education level, rather than skills obtained from past relevant work, qualify him or her to do semi-skilled work, the ALJ need not analyze transferable skills.

substantial evidence suggesting that Ms. Brown's knee condition was less severe than described in the treating doctors' opinion forms, the ALJ's assignments of less weight to those opinions should be affirmed.

Ms. Brown next contests the ALJ's adverse credibility assessment. Pl. Mot. 27-28. Although the ALJ employed what has unfortunately become boilerplate language in suggesting that Ms. Brown's statements "are not credible to the extent they are inconsistent with the above residual functional capacity assessment," (Tr. 14), the remainder of the ALJ's analysis reveals substantial evidence to support the conclusion. Specifically, as described above, the ALJ summarized the medical records suggesting that Ms. Brown's knee impairment was not disabling to the degree she described, including records showing improvement in her condition and non-compliance with prescribed treatment.[2] (Tr. 14-15). In light of the evidence marshaled by the ALJ, the credibility assessment should not be disturbed.

Ms. Brown's final argument is the lack of a medical basis supporting the "sit/stand option at will."[3] (Tr. 28-31). However, an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Felton-Miller v. Astrue*, 459 F.App'x 226, 230-31 (4th Cir. 2011) (determining that an ALJ need not obtain an expert medical opinion as to an RFC, but should base an RFC on all available evidence). In this case, the ALJ's RFC assessment was less restrictive than that proposed by Ms. Brown's treating physicians, for the reasons stated above,

---

[2] Ms. Brown alleges that her non-compliance with treatment was caused by insurance issues. Pl. Mot. 27 n.17. However, this contention is undermined by the fact that she was a no-show at nine appointments, and did not return multiple phone calls from the physical therapist. (Tr. 224).

[3] Ms. Brown repeatedly employs the misnomer of "yo-yo" option to refer to the "sit/stand option at will." Pl. Mot. 29. The ALJ did not suggest that Ms. Brown would have to change positions if she preferred to stay still. Instead, the "sit/stand option at will" affords the worker maximum flexibility to choose a comfortable position in which to work, and to change positions if necessary.

but allowed Ms. Brown more flexibility than the RFC assessments proposed by the non-examining state agency physicians. *See* (Tr. 227) (Dr. Petty opinion that Ms. Brown could stand for six hours in an eight-hour workday); (Tr. 251) (Dr. Feld opinion affirming Dr. Petty's findings). The ALJ acknowledged that Ms. Brown suffered from degenerative joint disease in her right knee, but found that, on the whole, the medical record indicated the condition improved in 2011 and 2012, and that recent medical imaging did not show any new issues. (Tr. 15). Accordingly, the sit/stand option was supported by substantial evidence.

Ms. Brown further contends that the ALJ failed to ask the VE if his testimony comported with the Dictionary of Occupational Titles ("DOT"). However, the ALJ instructed the VE, "I'll assume your testimony is based on your knowledge, education and training, and [is] consistent with the Dictionary of Occupational Titles unless you tell me otherwise." (Tr. 45). The VE did not note any inconsistencies or discrepancies with the DOT. (Tr. 46-50). Ms. Brown posits that, because the DOT contains no sit/stand options, the VE's testimony was therefore deficient. However, the fact that the DOT does not mention a sit/stand option does not mean that VE testimony about a sit/stand option presents a conflict, discrepancy, or inconsistency with the DOT. *See, e.g., Amick v. Colvin*, No. 5:12–0922, 2013 WL 4046349, at *5 (S.D.W.Va. Aug. 8, 2013) (finding no conflict between the DOT, which does not address a sit/stand option, and VE testimony about jobs that will accommodate a sit/stand option); *Queen v. Astrue*, No. TMD-10-3364, 2012 WL 1016822, at *3 n.1 (D. Md. March 23, 2012) ("The common definition of 'to conflict' is 'to show antagonism or irreconcilability.' Because the DOT does not address the availability of a sit/stand option, it was perforce not irreconcilable with the [VE's] testimony.") (citation omitted). The ALJ therefore fulfilled his duty to assess whether the VE testimony aligned with the DOT.

Although Ms. Brown did not raise this issue, I note that the ALJ failed to incorporate any

5

discussion of Ms. Brown's mental health. In June of 2010, Dr. Esege diagnosed Ms. Brown with "major depression" and prescribed medication to address the symptoms. (Tr. 244-45). Ms. Brown's attorney specifically made reference to the diagnosis of depression at the hearing, and the ALJ engaged Ms. Brown in a conversation regarding her mental health conditions. (Tr. 25-32). Despite that diagnosis, prescription, and colloquy at the hearing, in the written opinion the ALJ did not refer to Ms. Brown's depression. I note, however, that even Dr. Esege, the physician who diagnosed the depression, appears to have eliminated any discussion of that diagnosis in her subsequent treatment notes and opinions. *See. e.g.,* (Tr. 257-58) (treatment notes from December 2011 in which Dr. Esege did not list depression on Ms. Brown's "problem list" and noted that Ms. Brown "has been doing well"); (Tr. 262-65) (Treatment notes from October 2011 in which Dr. Esege notes the past diagnosis of major depression but finds that current psychiatric/behavioral symptoms are "negative" and does not include depression as a current diagnosis); (Tr. 277) (March 2012 medical opinion from Dr. Esege in which she lists only "osteoarthritis knee" when asked to "give diagnosis for all physical and mental impairments."). Ms. Brown sought no other mental health counseling or treatment. It is therefore unclear whether the diagnosis of major depression even fulfilled the twelve-month durational requirement for consideration. *See* SSR 82-52, 1982 WL 31376. While the ALJ likely erred by not including an analysis of the Ms. Brown's mental health condition, in light of the lack of any medical evidence suggesting that the condition caused any functional impairment, the error is harmless and does not require remand.

CONCLUSION

    For the reasons set forth above, I respectfully recommend that:

    1. the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 20); and

    2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 18) and CLOSE

this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated:  April 29, 2014                                        /s/
                                                      Stephanie A. Gallagher
                                                      United States Magistrate Judge